1996 SD 42

**In the Matter of J.M.**

**No. 19312.**

Supreme Court of South Dakota.

Considered on Briefs March 14, 1996.

Decided April 24, 1996.

"roughed" road.

Mark Barnett, Attorney General, Jason M. Harris, Assistant Attorney General, Pierre, for appellee State.

Sean M. O'Brien, Brookings, for appellant J.M.

Tim Hogan, Brookings, for appellee E.L., Mother.

MILLER, Chief Justice.

[¶ 1] J.M., a minor child, appeals the trial court's order terminating the jurisdiction of the juvenile court and returning custody of him to his mother. We affirm.

### FACTS

[¶ 2] J.M. was born on November 2, 1979. He has an older brother and two younger sisters who reside with his mother and stepfather. In May 1990 at the age of ten, J.M. was adjudicated a delinquent child after cashing a forged check. Upon satisfactory completion of the terms and conditions of probation in July 1991, J.M. was discharged from probation and the juvenile court's jurisdiction was formally terminated.

[¶ 3] In October 1991 when J.M. was eleven years old, he was again adjudicated a delinquent child, having committed the offense of intentional damage to property in the second degree. Custody of J.M. was temporarily transferred from his mother and stepfather to his grandmother and step-grandfather (grandparents) pending the completion of a predispositional case study. On November 6, 1991, the juvenile court placed J.M. on probation for an indefinite period of time. One of the terms of his probation was that "during the entire period of said probation [J.M.] shall demean himself as a law-abiding citizen and shall not commit any Federal, State or local crime." The court also placed guardianship and custody of J.M. in his grandparents, while granting liberal visitation to J.M.'s mother and stepfather. The court concluded its order by stating: "It is the goal, in this Juvenile proceeding, to reunite this family as a functional family unit on or about June 1, 1992[.]"

[¶ 4] On June 10, 1992, following a review hearing, the trial court ordered continued

probation and continued guardianship and custody of J.M. with the grandparents. The court reiterated its goal of reuniting J.M. with his mother and stepfather.

[¶ 5] Following another review hearing in October 1992 the court continued J.M.'s probation but returned custody of J.M. to his mother and stepfather. In May 1993 the court again continued J.M.'s probation but transferred guardianship and custody of J.M. back to the grandparents. J.M.'s mother received visitation rights. In September 1993 and June 1994 the court continued J.M.'s probation and custody with the grandparents, while increasing visitation with his mother.

[¶ 6] On December 5, 1994, the trial court entered an order discharging J.M. from probation and terminating the jurisdiction of the juvenile court. The court's order indicated that J.M. had satisfactorily complied with the terms and conditions of probation. The court subsequently amended the order, discharging J.M. from supervised probation but continuing the jurisdiction of the juvenile court. The court granted J.M.'s motion for a home study investigation of his mother's home and the home of the grandparents. After a hearing on February 21, 1995, the court continued its jurisdiction over the case on the same terms and conditions as previously ordered. The court set a review hearing for June 13, 1995. Following this hearing, the trial court entered an order on June 25, 1995, which read in pertinent part:

> [T]he court having received evidence that the above named child has satisfactorily complied with the terms and conditions of probation;
>
> IT IS THEREFORE ORDERED that the said child is to be returned immediately to the custody of his mother, [E.L.], and that the said child be and hereby is discharged from probation and any further proceedings herein and that the jurisdiction of the Juvenile Court is hereby terminated.

J.M. was fifteen years old at the time the court entered this order.

[¶ 7] It is undisputed the trial court did not enter any findings of fact or conclusions of law concerning its June 25, 1995, decision and order. J.M. appeals, claiming the absence of findings and conclusions is reversible error. He also contends the trial court's decision returning him to the custody of his mother was contrary to his best interests.

## ISSUE 1.

[¶ 8] **Did the trial court err in failing to file findings of fact and conclusions of law when it issued its June 1995 order discharging J.M. from probation, returning him to the custody of his mother, and terminating the jurisdiction of the court?**

[¶ 9] As in most cases dealing with children, proceedings in juvenile delinquency cases are bifurcated into the adjudicatory and dispositional phases. *See In re P.L.H.,* 86 S.D. 564, 567, 199 N.W.2d 587, 589 (1972). During the adjudicatory phase, the court must determine if the delinquency allegations of the petition are admitted or, if contested, if they are supported by evidence beyond a reasonable doubt. SDCL 26–7A–1(2), 26–7A–55 and 26–7A–82. If so, the court makes an order adjudicating the child as delinquent. SDCL 26–7A–87. After issuing the order of adjudication, the court conducts one or more hearings to determine the proper disposition of the child. SDCL 26–7A–90. The court's decree of disposition must employ the least restrictive alternative available in keeping with the best interests of the child, with due regard to the rights and interests of the child's parents, guardian, custodian, other parties respondent, the public and the state. SDCL 26–8C–7; 26–7A–90.

[¶ 10] SDCL 26–8C–7 and 26–8B–6 set forth the alternatives which the court may consider in making an appropriate disposition. These statutes require that a decree of disposition contain one or more of the following alternatives: (1) probation or protective supervision by a parent, guardian, custodian, relative or other suitable person; (2) imposition of a fine; (3) assignment to a supervised work program; (4) foster care; (5) treatment in a group home or group care center; (6) examination and treatment at the human services center; (7) placement in the state training school or other juvenile facility; (8) placement in a detention facility for no more than

ninety days; (9) placement in an alternative educational program; (10) suspension, revocation or restriction of driving privileges; (11) transfer of custody to a child placement agency or other suitable person for placement; or (12) payment by the child for damage done to property. SDCL 26–8B–6 and 26–8C–7. Under our law, "[o]n completion of the final dispositional hearing the court shall issue findings of fact, conclusions of law and a final decree of disposition." SDCL 26–7A–90.

[¶ 11] J.M. argues the trial court failed to enter findings of fact and conclusions of law, as required by SDCL 26–7A–90, when it entered the June 1995 order terminating its jurisdiction and returning J.M. to his mother's custody. J.M. claims the court's oversight requires reversal of the court's order. We do not agree. J.M. confuses a dispositional decree with an order terminating the court's jurisdiction.

[¶ 12] Under SDCL 26–8C–7, the dispositional decree is an order which imposes remedial measures for the rehabilitation of the delinquent child. One of the enumerated alternatives contained in SDCL 26–8C–7, such as detention, treatment, or supervised probation, must be included in a dispositional decree. The court's order terminating J.M's probation and returning him to the custody of his mother was not a dispositional decree; it did not impose any of the statutory measures designed to rehabilitate a delinquent child. Rather, the court's order of June 25, 1995, was a recognition of the fact that J.M. had been successfully rehabilitated and he had fulfilled the provisions of an earlier dispositional decree. Under SDCL 26–8C–11, "Upon the successful completion of the dispositional plan of a delinquent child, *the court shall terminate its jurisdiction.* If the court determines that the dispositional plan has not been successful, the court shall make further disposition of the delinquent child." (Emphasis added.) Likewise, SDCL 26–8C–14 provides, in pertinent part:

The court shall review the terms and conditions of probation and the progress of each child placed on probation at least once every six months. The court may release a child from probation or modify the terms and conditions of the child's probation at any time, but any child who has complied satisfactorily with the terms, conditions and duration of probation *shall be released from probation and the jurisdiction of the court terminated.* (Emphasis added.)

Neither of these statutes require the trial court to enter findings and conclusions when it issues an order releasing the child from probation and terminating its jurisdiction. We therefore hold that the trial court complied with a statutory mandate and the absence of findings of fact and conclusions of law is not error.

## ISSUE 2.

[¶ 13] **Did the trial court abuse its discretion by discharging J.M. from probation, returning him to the custody of his mother, and terminating its jurisdiction?**

[¶ 14] In reviewing a court's order of disposition in a delinquency proceeding, we consider whether or not the trial court abused its discretion or otherwise committed an error of law requiring reversal. *Walker v. State*, 548 A.2d 492, 493–94 (Del.Super.Ct.1987), *aff'd* 547 A.2d 131 (Del.1988); *In re Jones*, 230 Neb. 462, 432 N.W.2d 46, 48 (1988); *In re L.G.*, 728 S.W.2d 939, 944 (Tex.Ct.App.1987); *In re L.T.*, 149 Vt. 473, 545 A.2d 522, 523 (1988). We conclude a trial court's determination that the juvenile has satisfied the terms of the dispositional plan is likewise subject to an abuse of discretion standard of review.

[¶ 15] As part of his probation, J.M. was required to "demean himself as a law-abiding citizen" and refrain from committing "any Federal, State or local crime." He was also required to fully comply "with the rules and regulations imposed for his conduct by his custodians." As noted above, upon successful completion of probation, the juvenile court must terminate its jurisdiction. SDCL 26–8C–11 and –14.

[¶ 16] The evidence is overwhelming that J.M. complied with the terms of his probation. Since being adjudicated delinquent in 1991, J.M. has not committed any violations

of the law. He has excelled in school and participated in extracurricular sports. He does not present any serious discipline problems at home or at school.

 [¶ 17] J.M. does not dispute these facts, or even appear to deny that he has complied with the terms of his probation. Instead, J.M. argues that the court should have continued its jurisdiction and permitted him to remain in the custody of his grandparents. At the June 25, 1995 hearing, J.M. testified about his desire to remain with his grandparents, where he is happy and doing well in school. He expressed concern that, if he is returned to his mother's home, he will revert to his previous delinquent behavior. J.M. did not testify that his mother or stepfather are abusive or neglectful, but emphasized his preference for living with his grandparents. Likewise, a home study requested by the court recommended J.M. be permitted to remain with his grandparents. The home study did not identify J.M's mother or stepfather as unfit, but noted J.M.'s warmer relationship with his grandparents and his fears that his education and reputation would suffer if he lived with his parents.

[¶ 18] However, the terms of SDCL 26–8C–11 and –14 are emphatic. Upon successful completion of probation, a delinquent child shall be released from probation and the jurisdiction of the court shall be terminated. SDCL 26–8C–11 and –14. The law does not permit the trial court to continue its jurisdiction over a fully rehabilitated child so as to avoid returning the child to capable parents. It would seem that J.M. and the grandparents are having difficulty distinguishing between the review of a custody determination and the termination of juvenile delinquency proceedings.

[¶ 19] SDCL ch 26–8A provides an avenue for removing children from the home of abusive or neglectful parents. Unable to make a showing of parental unfitness under this chapter, J.M. cannot insist on the unlawful extension of a delinquency proceeding to achieve a permanent change in custody. We conclude the trial court did not abuse its discretion or commit an error of law by releasing J.M. from probation, returning him to the custody of his parents, and terminating the court's jurisdiction.

[¶ 20] Affirmed.

[¶ 21] SABERS, AMUNDSON, KONENKAMP and GILBERTSON, JJ., concur.