IN RE INTEREST OF MARDI AND MENDI BIESECKER, CHILDREN UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. MARLENE BIESECKER, APPELLANT.

333 N.W.2d 923

Filed May 20, 1983. No. 82-455.

William G. Line of Kerrigan, Line & Martin, for appellant.

Dean Skokan, Dodge County Attorney, and Marianne Clifford Upton, for appellee.

Richard L. Kuhlman, guardian ad litem.

Thomas B. Thomsen, acting guardian ad litem.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

PER CURIAM.

Marlene Biesecker became involved with the juvenile authorities on January 26, 1980, at 2 a.m., when she was found passed out in a running automobile in a traffic lane at 16th and Bell Streets in Fremont, Nebraska. She was arrested for driving while intoxicated and failed a preliminary breath test. The officers discovered that Marlene had two children, approximately 9 and 7 years of age, at her home alone. At about 2:30 a.m. the officers arrived at the house. Color photos taken at that time indicated a condition incredibly disorderly and filthy. The scene can best be described as a two-story menage of scattered clothing, garbage, cat and dog feces, litter, dirty pots, pans, and dishes, remains of beer and vodka containers, burned and discarded food, sexually explicit magazines, dirty bed clothing, and odds and ends difficult to describe. This was the sixth arrest

for driving while intoxicated. The children were taken into the temporary custody of the social services department and a petition was filed in the county court that Mendi, born March 12, 1973, and Mardi, born August 14, 1970, lacked proper parental care by reason of the fault or habits of a parent. On April 24, 1980, Marlene appeared with counsel and admitted the allegations of the petition. A court-appointed guardian ad litem, Richard Kuhlman, also appeared and joined in the admissions. The court continued the matter pending preparation of a rehabilitation plan.

On April 29, 1980, at the disposition hearing, the children were ordered placed with Dodge County Social Services in foster care for 6 months, and the court ordered a rehabilitation plan with monthly reports of progress and visitation, and ordered that if satisfactory progress was made the children should be returned to Marlene.

On September 3, 1980, the children were ordered returned to Marlene's custody. The order required evaluations, alcohol treatment, and continuing improvement in housekeeping. The evaluations indicated somewhat emotionally and physically deprived children. Marlene freely admitted being an alcoholic and described animosity toward her father, stepmother, and brother. She entered an alcohol treatment center and was asked to leave. She voluntarily entered the alcohol treatment facility at the Hastings Regional Center. After release from the hospital she abstained from alcohol for 1 week and then resumed drinking. Since that time there have been a series of short abstinences and a return to the habits of the past.

The return of the children was short-lived. Marlene resumed drinking and, on inspection, the home was found to be in the same condition as it was found to be in January 1980. The children were returned to foster care in November and have been in foster care since that time.

In January 1982 Marlene was arrested for the seventh time for driving while intoxicated and was charged with a third offense, pled guilty, and was sentenced to a term of 1 to 3 years at an institution of the Department of Corrections in York, Nebraska, in March 1982.

The court has repeatedly prepared rehabilitation plans and Marlene has repeatedly signed those plans. She has been supervised by a variety of people, counseled by alcohol counselors and social workers, and evaluated by a psychiatrist. Marlene has violated repeatedly each and every plan. While all examiners are unanimous in their view that Marlene is an alcoholic and cannot with safety be allowed to have custody of her children, Marlene remains adamant in her refusal to attend AA meetings or to stop drinking. She has made great progress in keeping a house, only to have that progress evaporate and the housekeeping revert to its old form.

"[W]hen natural parents cannot rehabilitate themselves within a reasonable time after the adjudication hearing, the best interests of the children require that a final disposition be made without delay." *In re Interest of Kain*, 209 Neb. 229, 235, 307 N.W.2d 119, 123 (1981).

The conviction, sentence, and the return to drinking were the reasons given for the order terminating parental rights.

Counsel for Marlene and one of the two guardians ad litem for the children strenuously urge us to consider that Marlene's alcoholism did not prevent her from securing and keeping both a full-time and a part-time job, that she genuinely loves her children, and that termination may be punishing her for a disease and the result of recommendations by disenchanted welfare workers.

There is not present in this record even the slightest sliver of evidence sufficient even to convey a ray of hope that alcohol will not always raise a barrier between Marlene and her children.

We, as were the juvenile court and the District Court, are faced with that dilemma, so common to juvenile cases, of the specter of termination or the limbo of permanent foster care, since custody is not even remotely possible.

The best interests of the children seemed to the juvenile court and the District Court to require termination. We reluctantly agree. "An appeal of a juvenile proceeding to this court is heard de novo upon the record; and the findings of fact by the trial court will be accorded great weight because the trial court heard and observed the parties and witnesses. Also, the trial court's findings will not be set aside on appeal unless they are against the weight of the evidence or there is a clear abuse of discretion." *In re Interest of Kain, supra* at 233, 307 N.W.2d at 122. Childhood is a fragile and vital moment of a life. To require that moment to be spent subject to the whims of an unpredictable and unrepentant practicing alcoholic would be foolish and cruel. We affirm.

AFFIRMED.