IN RE INTEREST OF SPRADLIN, A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. ANNA MASTERSON SPRADLIN AND THOMAS ANTHONY SPRADLIN, SR., APPELLANTS.
336 N.W.2d 563

Filed July 15, 1983. No. 82-400.

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch, for appellant Anna Masterson Spradlin.

Richard Douglas McClain, for appellant Thomas Spradlin.

Michael G. Heavican, Lancaster County Attorney, Richard J. Hautzinger, and Steven Guenzel, guardian ad litem, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, WHITE, HASTINGS, CAPORALE, AND SHANAHAN, JJ.

PER CURIAM.

This appeal challenges the order of the juvenile court terminating the parental rights of the appellants, Anna Masterson Spradlin and Thomas Anthony Spradlin, Sr., as to their son, Thomas Anthony Spradlin, Jr., born November 27, 1980. We affirm.

Neb. Rev. Stat. § 43-209(5) (Reissue 1978) provides that the juvenile court may terminate all parental rights between parents and a child when the court finds such action to be in the best interests of the child and it appears by the evidence that the parents are unable to discharge their parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged, indeterminate period.

In reviewing this matter we are mindful of the fact that an appeal of a juvenile proceeding to this court is heard de novo upon the record, but that the findings of fact by the juvenile court will be accorded great weight because it both heard and observed the parties and witnesses. *In re Interest of Fant, ante* p. 692, 335 N.W.2d 314 (1983); *In re Interest of Biesecker, ante* p. 425, 333 N.W.2d 923 (1983); *In re Interest of Levey*, 211 Neb. 66, 317 N.W.2d 760 (1982).

We recognize, too, that an order of the juvenile court terminating parental rights must be based on clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re Interest of McKinzie*, 212 Neb. 399, 323 N.W.2d 78 (1982).

Many of the relevant facts are contained in *In re Interest of Spradlin*, 210 Neb. 734, 317 N.W.2d 59 (1982), affirming the April 20, 1981, order of the juvenile court, which found the minor to be a dependent child, as defined in Neb. Rev. Stat. § 43-202(1) (Reissue 1978), through no fault of the appellant parents, and placed the child in foster care with legal custody in the Lancaster County Department of Public Welfare. We do not reiterate those facts herein. The April 20, 1981, order placing the child in foster care also found grounds existed for termination of parental rights under § 43-209(5). However, instead of terminating appellants' parental rights at that time, the juvenile court reserved ruling on that issue in order to give the parents an opportunity to pursue the arrangement of a plan for a third person live-in caretaker. On October 8, 1981, the juvenile court approved a live-in caretaker plan, with custody of the child remaining in the Lancaster County Department of Public Welfare, and scheduled a further hearing. The evidence adduced at hearings held after the implementation of that plan established that the plan had not succeeded. The appellant Thomas Anthony Spradlin, Sr., argued with and assaulted the caretaker, and the caretaker moved out. There was expert testimony that the continuing of foster care was not logical and that it was important to the child to have a stable living arrangement. The juvenile court, on March 24, 1982, terminated appellants' parental rights in the child, specifically noting that the plan was no more than a temporary foster care arrangement which was subject to abrupt change, that such changes would be psychologically damaging to

the child, and that a caretaker could not correct the mental deficiency of the parents.

In this appeal, counsel for the appellant parents contends as error by the juvenile court the (1) failure to hold § 43-209(5) to be void for unconstitutional vagueness; (2) failure to hold § 43-209(5) to be unconstitutional as being overbroad; (3) admission into evidence of the testimony of Professor John DeFrain; (4) overruling of appellants' motion for continuance; (5) admission of testimony on the issue of termination of parental rights, when such was allegedly not raised by the pleadings; and (6) termination of parental rights when there was allegedly insufficient evidence to sustain the same.

The first assignment concerning vagueness is totally without merit. Indeed, this court has previously decided this issue adversely to the position taken by counsel. In *State v. Metteer*, 203 Neb. 515, 279 N.W.2d 374 (1979), we said, concerning § 43-209(5) in particular, that the statutory language prescribing the conditions under which parental rights may be terminated is sufficiently definite that it does not run afoul of vagueness standards. The Constitution only requires that statutory language be reasonably certain, and that requirement may be satisfied by the use of ordinary terms which find adequate interpretation in common usage and understanding. This case is factually indistinguishable from *Metteer*, as regards the application of the statute to it. Indeed, the diagnosed mental illness found in both cases is identical. Also identical is the lack of care given to the child as a result of the parents' mental illnesses. *Metteer* is therefore controlling and is dispositive of this assignment. In his brief counsel attempts to argue that this court has never addressed the termination of parental rights based solely upon this particular statutory subsection. This contention is simply not true. *Metteer* specifically rested upon this section, inasmuch as the termination therein could not have occurred in its absence.

Counsel further raises a number of other questions, primarily under the second assignment, attempting to interlace these with the court's language in *Metteer* and to suggest that because *Metteer* and other cases do not "answer" these questions, the statutory section at issue is therefore necessarily unconstitutional. Counsel concerns himself with whether the inability to discharge parental duties is to be measured qualitatively or quantitatively, or in both or neither of those fashions; he further concerns himself with the precise percentage of functional ability required and with the circumstances under which a parent must or need not hold a child. Such questions have no basis in the statutory language, nor in the case law language. These rhetorical questions are in fact nothing more than an attempt to recast the second assignment and to tuck it into the confines of the first assignment. The questions are properly disposed of in the discussion which follows.

Appellants' second assignment also claims that § 43-209(5) is unconstitutionally overbroad. This contention has also been decided previously, and adversely to counsel's position. In *State v. A.H.*, 198 Neb. 444, 253 N.W.2d 283 (1977), this court, again in an action based upon, inter alia, this specific statutory section, noted that these grounds were constitutionally adequate, and that although they might be "somewhat broad" in terminology, they nonetheless provide adequate standards which people of ordinary intelligence can understand and by which they can regulate their conduct so as to avoid termination. Indeed, this court noted in *State v. A.H.* that it would be virtually impossible to draw a statute with greater specificity and to at the same time adequately protect the child affected.

Appellants further seek to divide and conquer the statute by differentiating between behavior and status as regards mental illness. *State v. A.H.* makes it clear that the statutes do not contemplate

such a distinction. Rather, mental illness, likely to continue for a prolonged period, is per se an adequate ground for termination of parental rights when the parent is unable to discharge parental responsibilities. The evidence in the record indicates that the appellants are unable to discharge their parental responsibilities because of their mental illnesses. It does not matter, therefore, whether the illness manifests itself otherwise, so long as they are thereby unable to properly discharge their parental duties. Counsel offers a lengthy dissertation in his brief concerning the meaning of the court's treatment of various factual situations in other cases involving termination of parental rights. However, these are inapposite here, since there is no statutory distinction between status and behavior; rather, the decisive factor is the effect of the mental illness upon the ability to parent. The second assignment is therefore also totally without merit and is in fact, as was the first assignment, frivolous. Indeed, it is just a factual situation such as appears in the instant case which requires the flexibility found in the applicable statutes in order that the State may protect hapless dependent and neglected children.

Counsel's third assignment, to the effect that the admission of the testimony of one Professor John DeFrain, over objection, was improper because counsel was not present at the interviews between Professor DeFrain and appellants, is likewise without merit. Counsel largely equates criminal standards requiring counsel in criminal prosecutions with the present situation, but fails to offer any authority for so doing. He apparently fails to realize that this is not a criminal prosecution; rather, it is a statutorily mandated proceeding brought about to protect the dependent and neglected child. Indeed, counsel even acknowledges in his brief that *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), indicates that the right to counsel in termination proceedings is not always

constitutionally required. He then asserts that once counsel has been afforded, the State may not unilaterally act without providing counsel. However, he fails to offer any authority whatsoever for this proposition. Counsel's arguments may be summed up thusly: Since there is a right to counsel in criminal prosecutions, and since the professor's testimony was unfavorable, the admission of it was unconstitutional. Such conclusion requires no comment.

With regard to counsel's fourth assignment, concerning the overruling by the trial court of a motion to continue, it is clear that it is also frivolous and without any basis. The argument presented in the brief is to the effect that the court necessarily implicitly dismissed the proceeding by approving the appellants' plan. This is clearly false; the very order approving the trial plan provided that a further hearing on disposition was to be held. See, also, *State v. Williams*, 200 Neb. 182, 263 N.W.2d 90 (1980), stating that once jurisdiction to terminate parental rights has been properly invoked, it continues until such time as the matter is finally determined. Clearly, it is the law in this jurisdiction that the proceeding had not been finally determined by approval of a trial plan.

The fifth assignment contends that error was committed by the admission of testimony on the issue of termination of parental rights, when such was not properly raised by the pleadings. This is only vaguely addressed in the argument, but it appears to be merely a rephrasing of the argument proposed by the fourth assignment, that the cause had been dismissed, and therefore the analysis of the fourth assignment is dispositive of this assignment. That is, the proceeding for termination of parental rights had not been terminated, but merely continued. This is clear from the record, as well as from the applicable case law. *State v. Williams, supra.*

The final assignment is to the effect that the juvenile court erred in terminating the parental rights

without a sufficient amount of evidence to sustain the judgment. This suggestion is simply without basis. The record before the court contains no evidence other than that the appellants are unable to discharge their parental functions and that there is no reason to expect that they will be able to do so within any relevant period of time. We are mindful that the primary and paramount consideration in a case such as this is the best interests of the infant. *In re Interest of Wood and Linden*, 209 Neb. 18, 306 N.W.2d 151 (1981). It is also generally in the best interests of a child to make a final determination with respect to the termination question as soon as possible. *In re Interest of Biesecker, ante* p. 425, 333 N.W.2d 923 (1983); *In re Interest of Hastings*, 211 Neb. 209, 318 N.W.2d 80 (1982); *In re Interest of Levey*, 211 Neb. 66, 317 N.W.2d 760 (1982). These requirements notwithstanding, the juvenile court patiently delayed its decision regarding termination for a relatively lengthy period of time in order to allow the appellants to attempt to effectuate their plan. Such plan proved to be an utter failure, and the court accordingly proceeded to enforce its prior determination, which resulted in termination of appellants' parental rights.

The evidence clearly and convincingly establishes that appellants herein are simply incapable of caring for the child, even in the best of settings, wherein they were provided live-in household assistance. It is indeed unfortunate that appellants do not have the ability to function adequately as parents; but, as much as one's sympathies may rest with appellants by virtue of that unfortunate reality, the State cannot stand idly by oblivious to the welfare of an infant or heedless of the fact that its failure to intervene, should the child survive, would likely result in producing yet another individual incapable of coping with life.

The action of the trial court was entirely correct and is affirmed.

AFFIRMED.